Appellant was convicted of robbery and the jury fixed his punishment at fifteen years imprisonment in the penitentiary. At arraignment, in the presence of his counsel, appellant interposed a plea of not guilty. After sentence was imposed appellant gave notice of appeal and trial counsel represents him on this appeal.
Appellant moved to exclude the State's evidence, requested the affirmative charge, and filed a motion for new trial raising, among others, the issue of sufficiency of the evidence. The motion to exclude and motion for new trial were overruled and the request for the affirmative charge denied. A recital of the evidence is thus necessary.
Appellant was charged by indictment with the robbery of Dennis Patterson of two dollars in coins and six cartons of cigarettes valued at thirty dollars. The crux of the defense was that it was not appellant who robbed Patterson but someone else who had borrowed appellant's car on the night of the robbery.
The robbery victim, Dennis Patterson, testified that on June 23, 1977, he was employed as a service station attendant at Vicker's Oil Company on Bessemer Road, working from 10:00 p.m. till 6:00 a.m. The witness was alone at the station at 3:55 a.m. when two men and two women drove up in a late sixties blue Camaro. He was unable to describe them. One of the men *Page 299 
got three quarts of oil from Patterson, and put the oil in the car, but refused to pay for it. An argument ensued between Patterson and the man who refused to pay for the oil and the four drove off. The victim wrote the tag number down.
In court, the victim identified appellant, James Earl Howell, as the man with whom he had the discussion about the oil, and as the driver of the car. He testified that the blue Camaro had a 1977 Alabama license tag, number A-M-N-5-6-5.
The victim further testified that the four occupants of the car drove half a block to Dan's Tavern, a drinking establishment. About ten minutes after the four had left, the witness was outside cleaning the back lot when appellant walked up behind him, from the alley, and asked him why he called the police.
Appellant was dressed in blue jeans, a "silk" gold and silver shirt, had a mustache and hair about the same length as that of the victim. He told Patterson "that it was a robbery," told him to go in the office and to hand appellant all the money. The witness gave appellant two dollars in coins. Appellant took the victim to the rest room, told him to stay for a minute and then "come out and call the police."
Patterson also testified that appellant told him "he was sorry he had to do this, but he was a heavy drug user." Appellant took a .25 caliber automatic pistol from the front of his pants and pointed it at the victim's stomach before he gave appellant the money. The two men were four to four and a half feet apart. Appellant was at the station for no more than eight minutes. The witness did not see the other three people or the blue Camaro at the time he was actually robbed. When appellant left, he called the police, who arrived about two minutes later. The victim told them what happened and gave them the tag number of the blue Camaro. Appellant also took six cartons of cigarettes valued at thirty dollars.
On cross-examination, inconsistencies between Patterson's testimony at trial and that at an earlier hearing were brought out, primarily regarding his identification of appellant as the man who robbed him. Patterson had testified earlier that he could have been mistaken, that it could have been someone who looked like appellant.
On redirect examination, the witness again made a positive in-court identification of appellant as the man who pulled a gun on him, demanded money and said he was a heavy drug user.
A Birmingham police officer testified that he responded to a call on June 23, 1977, around 4:00 a.m., at Vicker's Service Station on Bessemer Road, and took an incident report from Dennis Patterson. The victim told him he had been robbed and gave a description of the car and license tag number. The officer understood that the blue Camaro was located by police that night in Tarrant City.
On cross-examination, the officer testified that the incident report stated eight dollars had been taken. The report was admitted into evidence.
An evidence technician from the Birmingham Police Department testified that fingerprints were lifted from some oil cans at the scene, but they were insufficient for a comparison.
Sgt. J.C. Woods of the Robbery Division of the Birmingham Police Department and the investigating officer in this case, testified that he arrested appellant, James Earl Howell, at his home in Tarrant City on June 27, 1977, at approximately 4:30 p.m. On voir dire, outside the presence of the jury, adequateMiranda and voluntariness predicates were laid for the statement given to police by appellant. In his statement, appellant denied knowledge of the robbery. He stated that he owned a blue Camaro but was not driving it on the night of June 23, 1977. When told a witness had seen him in the car, he admitted going to Vicker's Service Station on Vanderbilt Road, around 12:00 or 1:00 on June 23, but denied being at Vicker's on Bessemer Road. Appellant stated he did go to shoot pool later that night with his brother at Dan's Tavern, a block from the Bessemer Road service station. *Page 300 
On cross-examination, the officer testified the statement taken from appellant was oral, and a written rights waiver was not obtained. The witness did not recall if he referred to the incident by date or by day when talking with the appellant.
Appellant objected to the admission of his statement on the ground that there was not adequate showing of the giving of rights and that the evidence before the Court was insufficient to allow the witness to testify to the conversation from recollection. The objection was overruled.
When the jury returned, it was again shown that Miranda
warnings had been given prior to interrogating appellant. The State laid the proper predicate and appellant's statement was admitted into evidence.
The witness testified that a "photo lineup" was held, whereupon a voir dire examination was had outside the presence of the jury. Sgt. Woods testified that on June 27, 1977, before appellant was arrested, he took five photographs to Dennis Patterson's home. The photographs were laid out and Patterson was asked if any person pictured was the one who robbed him. He picked out a photograph of appellant, signed and dated it. Sgt. Woods testified that the photograph selected was a picture of James Earl Howell. The trial court ruled that any conversation was inadmissible. Objection was made to any evidence of the identification on grounds of hearsay, bolstering one's own witness, and improper predicate. No ruling was made by the court. Sgt. Woods testified that he did not tell Patterson that he had a picture of the person who robbed him, nor did he in any way suggest what picture the victim should identify.
Dennis Patterson then testified, and his testimony regarding the photographic identification was substantially the same as that of Sgt. Woods with a single exception. The witness testified that after he picked out appellant's photograph, Sgt. Woods told him they had a man in custody and it was the man he identified. He identified State's Exhibits 1-5 as the photographs which Woods brought to his house, and State's Exhibit No. 3, appellant's picture, as the one he picked out. The trial judge admitted the evidence of the identification, excluding any testimony of what was said.
Before the jury, Sgt. Woods testified again regarding the identification procedure and the photographs were introduced over objection that the proper predicate had not been laid. He further testified that he did not tell Patterson that a man was in custody and that appellant was not arrested until after the photographic identification.
Donny Carlisle testified that he had traded a 1961 blue Camaro, license number A-M-N-5-6-5, to appellant. He also testified that on or around the Wednesday night preceding June 23, 1977, he was working at Vicker's Service Station on Vanderbilt Road and that appellant was there around midnight in the blue Camaro. On cross-examination, the witness could not be sure what night he saw appellant.
Donna Hubbart testified that on Thursday night, June 23, 1977, she and appellant's brother, Steve Howell, were with Terry McDaniel and another girl in appellant's blue Camaro. This witness testified that she saw appellant at the apartment of McDaniel's sister around dark that evening where he was sleeping. The four were on the way to Jim and Jim's Bar about a block from the scene of the robbery when they pulled into Vicker's Service Station on Bessemer Road. All four had been drinking. The appellant was not present. Steve Howell and Terry McDaniel got out of the appellant's car at the service station, but the witness did not overhear their conversation. The four of them went to Jim and Jim's and on the way home appellant's car broke down. The witness was in her car with the other girl and they picked up Steve Howell and Terry McDaniel, leaving appellant's car on the side of the Bessemer Super Highway. They returned to the apartment where the witness had seen appellant earlier in the evening and Steve Howell went in to tell the appellant his car had broken down. She did not see the appellant at that time or go into the apartment. *Page 301 
On cross-examination the witness testified that the four left Jim and Jim's after midnight; that appellant's car broke down approximately two to three blocks from the Vicker's Service Station on Bessemer Road and that she had been drinking a good bit that evening and did not recall the exact time. She also testified that to her knowledge the car was left there on the highway overnight.
Hayes Combs testified that on the night the Vicker's Service Station was supposed to have been robbed, he saw appellant's blue Camaro in West End between midnight and 2:00 a.m. The car was being driven by Terry McDaniel and he did not see anyone else in the car.
On cross-examination the witness was unsure about the exact date, but he did know that it was on the night the robbery was supposed to have happened.
Steve Howell, appellant's brother, testified that on the night in question, he and Terry McDaniel went to Vicker's Service Station on Bessemer Road in appellant's blue Camaro. They were followed by Donna Hubbart and another girl in a white station wagon. The witness and McDaniel argued over buying oil for appellant's car and then the four of them went to Jim and Jim's. The four left some time before 2:00 a.m. and appellant's car broke down about two blocks past Vicker's Service Station. Donna Hubbart picked the witness and Terry McDaniel up and took them to Terry's sister's apartment where the witness went in and told his brother what had happened to his car. This witness further testified that he had been unable to find Terry McDaniel since that night. The witness stated that these events took place on a Thursday night and Friday morning.
Appellant James Earl Howell testified in his own behalf. He stated he was not at the Vicker's Service Station on Bessemer Road on the night of the robbery. He testified that Terry McDaniel had his 1969 Camaro that night, that he did not and never had had a drug problem, and that he had never been convicted of any offense.
On cross-examination, appellant testified that he went to Vicker's Service Station on Vanderbilt Road on Tuesday night and that that was the last time he drove the car before he let Terry McDaniel have it on Wednesday. He denied telling Sgt. Woods that he was at Dan's Tavern on that night. He testified that he was with Terry McDaniel's sister on Wednesday night and Thursday night, that he went to work Friday morning, and that his car was towed in on that day. He further testified that he did not own a pistol and that he did not rob the Vicker's Service Station.
Isaac Hills and Lorenzo Bibbs testified that on a Friday morning in June, 1977, they towed in a car belonging to appellant. It was Isaac Hills' testimony that the car was blue and Bibbs testified that it was a black Mustang. Both witnesses testified to the good general reputation in the community of appellant and to his reputation for truth and veracity.
Appellant contends the admission of the five photographs used in the extrajudicial photographic identification procedure was error. The test for admissibility of photographs is whether they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. Fletcher v. State, 291 Ala. 67,277 So.2d 882.
The testimony of both Sergeant Woods and the victim regarding the prior extrajudicial identification and the photographs themselves were introduced by the State to rebut the inference raised on cross-examination of the victim that he might have mistakenly identified appellant as the robber. The evidence thus adduced was competent and relevant as it tended to disprove that inference. This right of rehabilitation, extending to testimony by a third person as well as that by the impeached witness, is distinguished from corroboration by a witness of his own evidence and was upheld in Aaron v. State,273 Ala. 337, 139 So.2d 309, cert. denied 371 U.S. 846,83 S.Ct. 81, 9 L.Ed.2d 82. *Page 302 
The predicate for introduction of the photographs was laid on voir dire examination by Sgt. Woods and the victim, Dennis Patterson. Both men testified that the photographs marked as State's Exhibits 1-5 were the same ones which Sgt. Woods showed the victim at his home and from which he identified the appellant. Sgt. Woods also testified that the photographs were in substantially the same condition at the time of the trial as when he showed them to Patterson. It was also established that the officer did not suggest in any way which photograph should be picked or that a suspect was included in the group. There was conflicting testimony regarding whether Sgt. Woods told Patterson that a man was in custody.
Following this testimony, the trial judge allowed into evidence the photographs and testimony that the victim identified a photograph of appellant, but any conversation between Sgt. Woods and the victim was excluded. This admission was within the sound discretion of the trial judge. Aaron,supra.
The evidence adduced at trial on the extrajudicial photographic identification, including photographs and testimony, was properly admitted as the procedure testified to was not so suggestive as to cause a substantial likelihood of irreparable misidentification. Simmons v. United States,390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.
Appellant further contends the admission of the photographs was error on the ground that they were "mug shots" which draw attention to a prior criminal record. The only objection at trial to admission of the photographs was that no proper predicate had been laid. Where a specific objection to admission of evidence is made, all other grounds are waived. Since appellant failed to properly object at trial to the introduction of "mug shots," nothing is presented to this Court for review. Hargrove v. State, Ala.Cr.App., 344 So.2d 823.
The evidence to support appellant's conviction for robbery is sufficient. The evidence is in sharp conflict as to the identity of the person who robbed Vicker's Service Station. The State presented evidence through the in-court identification by Dennis Patterson, the victim, as well as through testimony of an extrajudicial photographic identification of appellant by Patterson that appellant, James Earl Howell, committed the robbery. In addition, appellant's statement was admitted into evidence, in which he admitted driving the 1969 blue Camaro on the night in question although he denied having robbed the service station. The evidence was uncontroverted that appellant owned the 1969 blue Camaro driven by the robber.
The evidence presented by the appellant on the other hand tends to show that he was at the apartment of Terry McDaniel's sister on the night of the robbery and that his car was being used by Terry McDaniel, Steve Howell, and the two girls.
Another conflict in the evidence relates to the dates on which the events testified to took place. There was confusion in the testimony of defense witnesses about the exact date on which they used appellant's car. In the statement given Sgt. Woods appellant stated that he did drive the car on the night of the robbery. At trial, however, he testified that the last time he drove the car before the robbery was the Tuesday night of that week.
The jury was presented with the choice of accepting the positive identification of appellant by Dennis Patterson as the man who robbed him, or the evidence of appellant and his witnesses that his car was being used by someone else that night and he was never in it. The court fully charged the jury on the law governing alibi testimony. We have held many times that alibi evidence is always a jury question. Ala.Dig.Crim.Law, 739 (2).
Conflicting evidence in a robbery prosecution as to whether appellant committed the robbery presented an issue for the jury to resolve and a verdict rendered thereon will not be disturbed on appeal. Lee v. State, Ala.Cr.App., 346 So.2d 31; Young v.State, Ala.Cr.App., 346 So.2d 509. *Page 303 
A careful search of the record reflects no error injuriously affecting the substantial rights of appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.